# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

        Plaintiff,    :    Case No. 3:17-cr-071
                                                Also Case No. 3:21-cv-259

                                                District Judge Walter H. Rice
-  vs  -                                       Magistrate Judge Michael R. Merz

LAITH WALEED ALEBBINI,

        Defendant.       :

## REPORT AND RECOMMENDATION

This case under 28 U.S.C. § 2255 is before the Court for decision on the merits. Relevant pleadings are Defendant's § 2255 Motion to Vacate (ECF No. 132), the Government's Response in Opposition (ECF No. 163), and Defendant's Traverse (ECF No. 170). The § 2255 Motion was referred to the undersigned before February 1, 2022, for a report and recommendations; ultimate decision of the Motion is reserved to the assigned District Judge, Walter H. Rice.

**Litigation History**

Defendant was indicted by the grand jury for this District on May 11, 2017, and charged with knowingly attempting to provide material support and resources to ISIS, a foreign terrorist organization, in his own person, in violation of 18 U.S.C. § 2339B(a)(1)(Count One)(ECF No.

1

12). A First Superseding Indictment filed May 21, 2018, added a count of conspiring to violate the same statute (ECF No. 36). On September 4, 2018, Defendant waived his right to trial by jury (ECF No. 56). The case was tried to the bench beginning November 13, 2018 (Minute Entries, ECF No. 60, *et seq*.). On December 6, 2018, Judge Rice announced his verdict of guilty on both counts (ECF No. 71). On June 13, 2019, Judge Rice sentenced Defendant to 180 months on each count with the time to be served concurrently (Minutes, ECF No. 91). Defendant appealed to the Sixth Circuit Court of Appeals which affirmed the conviction on November 5, 2020. *United States v. Alebbini*, 979 F. 3d 537 (6th Cir. Nov. 5, 2020)(copy at ECF No. 127). Neither the docket nor the Westlaw database reflects any attempt by Defendant to obtain review by the United States Supreme Court.

Defendant filed his § 2255 Motion to Vacate in this Court on September 21, 2021, pleading the following Grounds for Relief:

**Ground One: Prosecutorial Misconduct**

    Sub-claim A: By Making False Statements to the Court (ECF No. 132, PageID 3988).

    Sub-claim B: By Surprise *Id.* at PageID 3991.

**Ground Two: Ineffective Assistance of Counsel**

    Sub-claim A: By choosing a bad strategy. *Id.* at PageID 3991, PageID 4001.

    Sub-claim B: By making a Harmful Objection. *Id.* at PageID 3997.

    Sub-claim C: By failure to present evidence on behalf of the Defendant. *Id.* at PageID 3998.

    Sub-claim D: Defense counsel refused to file post-conviction motions on behalf of Defendant.

**Ground Three: Judicial Misconduct**

    Sub-claim A: Classified Information Procedure Act. *Id.* PageID 4003.

    Sub-claim B: The Honorable Judge Rice does not accept *pro se* motions. *Id.*

    Sub-claim C: The verdict is not supported by sufficient competent evidence. *Id.*

**Government's Response**

The United States defends against Alebbini's claims on a number of bases. Some of the claims or sub-claims are argued to be procedurally defaulted because they were not properly preserved by objection at trial or raised on appeal. Some are argued to be barred by *res judicata* because they were raised on appeal, but decided adversely to Alebbini's claim, or could have been raised on appeal but were not. Finally, some are argued to be without merit.

**§ 2255: Scope of the Remedy**

A prisoner seeking relief under 28 U.S.C. § 2255 must allege either "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid" *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Nichols v. United States,* 563 F.3d 240, 250 (6th Cir. 2009). In other words, to warrant relief under § 2255, a prisoner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect of influence on the guilty plea or the jury's verdict. *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2006), citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). To obtain relief under 28 U.S.C. §

3

2255, a defendant must establish the denial of a substantive right or defect in the trial that is inconsistent with the rudimentary demands of fair procedure. *United States v. Timmreck,* 441 U.S. 780 (1979); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)(*per curiam*). Relief under 28 U.S.C. § 2255 is available when a federal sentence was imposed in violation of the Constitution or laws of the United States or the trial court was without jurisdiction or the sentence is in excess of the maximum sentence allowed by law, or is "otherwise subject to collateral attack." *United States v. Jalili,* 925 F.2d 889, 893 (6th Cir. 1991). Apart from constitutional error, the question is "whether the claimed error was a 'fundamental defect which inherently results in a complete miscarriage of justice,'" *Davis v. United States*, 417 U.S. 333, 346 (1974), *quoting Hill v. United States*, 368 U.S. 424, 428-429 (1962); see also *Griffin v. United States,* 330 F.3d 733, 736 (6th Cir. 2006). Nonconstitutional claims not raised at trial or on direct appeal are waived for collateral review except where the errors amount to something akin to a denial of due process. *Grant v. United States,* 72 F.3d 503, 506 (6th Cir. 1996).

**Procedural Default Generally**

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

4

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed. d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)]. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). "[A] federal court may not review federal claims that were procedurally defaulted in state courts." *Theriot v. Vashaw*, 982 F.3d 999 (6th Cir. 2020), citing *Maslonka v. Hoffner*, 900 F.3d 269, 276 (6th Cir. 2018) (alteration in original) (quoting *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017)).

5

This precedent relates directly to defaults occurring in the state courts, but the procedural default analysis of *Wainwright* and its progeny is fully applicable to § 2255 motions. *United States v. Frady*, 456 U.S. 152 (1982); *Kaufman v. United States*, 394 U.S. 217 (1969); *Ratliff v. United States*, 999 F.2d 1023 (6th Cir. 1993).

### *Res Judicata* Generally

[W]hen a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Cromwell v. County of Sac*, 94 U.S. 351, 352 (1877). The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment. *Commissioner v. Sunnen*, 333 U.S. 591 (1948), diverged from in *Montana v. United States*, 440 US. 147 (1979).

"*[R]es judicata* has four elements: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 528 (6th Cir. 2006), quoting *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995); *State of Ohio ex rel Boggs v. Cleveland*, 655 F.3d 516 (6th Cir. 2011).

## Analysis

Reading Alebbini's Traverse as a whole, it evinces a desire to re-try the case. Issues that were tried and decided by Judge Rice, who was then affirmed on appeal, are brought forward in the § 2255 Petition to be heard and decided again. Several such issues are supported by new evidence, including prominently the post-trial Affidavit of Raid Ababneh, which of course is uncross-examined hearsay.

However, a § 2255 proceeding is not an opportunity to re-try a case. Persons convicted of federal crimes have a right to appeal to the appropriate circuit court of appeals and to seek review in the United States Supreme Court. Considering the efficiency of having all issues dealt with in one proceeding, the federal courts have encouraged use of direct review to the fullest possible extent. Yackle, POSTCONVICTION REMEDIES, §108 (1981). A motion to vacate under § 2255 is not a substitute for direct appeal. *United States v. Duhart,* 511 F.2d 7 (6th Cir. 1975); *DiPiazza v. United States*, 471 F.2d 719 (6th Cir. 1973). Absent manifest injustice or special circumstances such as a change in the law, § 2255 motions will be dismissed summarily if they raise claims that were or might have been asserted on direct review. Hertz & Liebman, Federal Habeas Corpus Practice and Procedure 6th, §41.7(e)(2011), *citing Reed v. Farley*, 512 U.S. 339, 358 (1994); *Withrow v. Williams*, 507 U.S. 680, 721 (1993); *Davis v. United States,* 417 U.S. 333, 342 (1974); *Kaufman v. United States*, 394 U.S. 217, 227 n. 8 (1969); Yackle, POSTCONVICTION REMEDIES, §108 (1981)*, citing Mars v. United States,* 615 F.2d 704 (6th Cir. 1980); *Mathews v. United States,* 11 F.3d 583 (6th Cir. 1993).

**Ground One:  Prosecutorial Misconduct**

In his First Ground for Relief, Alebbini claims he suffered from prosecutorial misconduct in that a prosecutor made an intentional misstatement of fact to the Court regarding communication of Raid Ababneh with ISIS.

The "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with the rudimentary demands of justice." *Workman v. Bell,* 178 F.3d 759, 766 (6th Cir. 1998), *quoting Giglio v. United States*, 405 U.S. 150, 153 (1972).  This rule applies to both the solicitation of false testimony and the knowing acquiescence in false testimony. *Workman v. Bell*, 178 F.3d 759, 766 (6th Cir. 1998), *citing Napue v. Illinois*, 360 U.S. 264, 269 (1959). However, to prevail on such a claim, a petitioner must show that the statement in question was false, that the prosecution knew it was false, and that it was material. *Wogenstahl v. Mitchell*, 668 F.3d 307, 323 (6th Cir. 2012), *citing Rosenkrantz v. Lafler*, 568 F.3d 577, 583-84 (6th Cir. 2009); *Brooks v. Tennessee*, 626 F.3d 878, 894-95 (6th Cir. 2010); *Byrd v. Collins*, 209 F.3d 486  (6th Cir. 2000), *citing United States v. Lochmondy,* 890 F.2d 817, 822 (6th Cir. 1989); *United States v. O'Dell*, 805 F.2d 637, 641 (6th Cir. 1986).  The statement must be indisputably false, rather than simply misleading.  *Lochmondy*, 890 F.2d at 823; *Byrd v. Collins*, 209 F.3d 486, 517 (6th Cir. 2000).

The United States defends on Ground One by noting that Alebbini does not point to any specific statement of a prosecutor that was known by that attorney to be false (Response, ECF No. 163, PageID 4162-71).  In response, Alebbini claims he did point to a specific statement, but one made by Judge Rice (Traverse, ECF No. 170, PageID 4216).  A claim of prosecutorial misconduct by false statement simply cannot be grounded on a statement by the trial judge, who

is not the prosecutor. Alebbini claims misstatements in the Verdict are the result of the Government's "theatrical persuasion." *Id.* But the manner of presentation, however theatrical, does not equate with intentional misstatements of fact. There follows in the Traverse a lengthy and correct discussion of the difference between an inference and an implication, but none of that speaks to a deliberate, intentional misstatement of fact by a prosecutor.

Alebbini's *Napue* claim is not only without merit, it is also barred by *res judicata*. It is well settled that a § 2255 proceeding cannot be used to litigate a claim that was raised and resolved on appeal or which could have been raised in that forum. *Dupont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996); *Sawyers v. United States*, 985 F.2d 561 (6th Cir. 1993); *Kelly v. United States*, 977 F.2d 581 (6th Cir. 1992); *Bousley v. United States,* 523 U.S. 614 (1998). Alebbini claims the Sixth Circuit did not decide the relevant question -- did Alebbini pledge support to ISIS? -- and asks for a remand to determine if the pledge to ISIS occurred (Traverse, ECF No. 170, PageID 4217). But immediately prior to this statement, Alebbini quotes the Sixth Circuit's language finding there was sufficient evidence to support Judge Rice's conclusion that Alebbini pledged to support ISIS, whether with an oath or "informally." *Id.* at PageID 4217, citing *United States v. Alebbini*, 979 F.3d 537, 548, 550 (6th Cir. Nov. 5, 2020). Assuming that is the question presented by the prosecutorial misconduct sub-claim, it was decided by the circuit court. And because this claim is based entirely on the record before the circuit court, if it was not decided, it could have been if fairly presented, which also results in a *res judicata* bar.

### Sub-claim B: Prosecutorial Misconduct by Surprise

Alebbini accuses the prosecutor of misconduct in that:

9

> The FBI agent Mr Herwig never mentioned a pledge of allegiance in the complaint or in the grand jury transcripts, nor did the prosecution in the pretrial litigation or in the statement of facts in the refused deal they offered, not even in their opening statement. If the defense had any clue that the government would've mentioned the word allegiance the defense should've and would've asked the expert Dr. Vidino to clarify but the government intended to surprise the defense.

(§ 2255 Motion, ECF No. 132, PageID 3991). This is the entirety of Sub-claim B and it does not state a claim on which § 2255 relief may be granted. The Constitution does not require that all the language that will be used by witnesses for the prosecution be anticipated by being included in the charging documents or pre-trial statements of supporting facts.

Second, any relief for this surprise is precluded by Alebbini's failure to make a contemporaneous objection. If he needed additional time to eliminate any prejudice from the surprise use of certain language, he did not ask for a continuance to allow time to meet it. Such a continuance would have been relatively easy for Judge Rice to grant because the case was being tried to the bench and not a jury. A second procedural default occurred when this claim was not raised on appeal.

**Ground Two: Ineffective Assistance of Counsel**

In his Second Ground for Relief, Alebbini claims he received ineffective assistance of trial counsel in four separate ways

Sub-claim A: By choosing a bad strategy. *Id.* at PageID 3991, PageID 4001.

Sub-claim B: By making a Harmful Objection. *Id.* at PageID 3997.

Sub-claim C: By failure to present evidence on behalf of the Defendant. *Id.* at PageID 3998.

Sub-claim D: By refusing to file post-conviction motions on behalf of Defendant.

**Standard for Ineffective Assistance Claims**

Claims of ineffective assistance of trial counsel are properly raised in a § 2255 proceeding rather than on direct appeal because of the preference of the appellate courts. *Massaro v. United States*, 538 U.S. 500 (2003); *United States v. Neuhausser*, 241 F.3d 460 (6th Cir. 2001); *United States v. Fortson,* 194 F.3d 730, 736 (6th Cir. 1999).

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.
> #

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), *citing Strickland, supra.*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *citing Strickland, supra*; *Blackburn v. Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987), *quoting Strickland,* 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *quoting Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes*, 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but

12

> the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id*., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. *Id*., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter*, 562 U.S. 86, 111-112 (2011).

#

**Sub-claim A: Choice of a Bad Strategy**

In his first sub-claim, Alebbini asserts his trial attorney chose a bad strategy for defense, to wit, claiming that the Government did not produce sufficient evidence to convict as opposed to showing Alebbini was considering a number of Syrian anti-Assad but non-terrorist groups to support. This argument is unpersuasive for a number of reasons.

First of all, a trial attorney's strategic choices almost never constitute ineffective assistance of trial counsel. *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). Indeed, strategic choices by defense counsel are "virtually unchallengeable." *Buell v. Mitchell,* 274 F.3d 337, 359 (6th Cir. 2001), *quoting Meeks v. Bergen*, 749 F.2d 322, 328 (6th Cir. 1984). Alebbini does not suggest the Government is choosing the label "strategic" to avoid evaluation of Attorney Anderson's work: it is Alebbini who labels the choice as "strategic."

Second, the two strategies in play are completely compatible: a defendant in Alebbini's situation could emphasize his search for a different anti-Assad group and at the same time urge there was insufficient proof of a pledge to ISIS. In fact, the two approaches to the evidence dovetail perfectly or at least Alebbini has not shown what the inconsistencies are.

**Subclaim B:  Ineffective Assistance by Making a Harmful Objection**

The Government's proof of an attempt to provide material support to ISIS involved proof that Alebbini purchased an airline ticket to Turkey and traveled to Dayton International Airport where he was about to board that flight when arrested.  According to Alebbini, a witness named Qaqa was prepared to testify that Alebbini's intent in doing those things was not to support ISIS, but to travel to the Middle East to continue his consideration of possible anti-Assad groups to support (Motion, ECF No. 132, PageID 3997).  The prosecutor asked if Alebbini was telling the witness what he was going to do.  The question seems to be framed so as to elicit hearsay – what did Alebbini say?  If Alebbini said something favorable to his theory of the case which Qaqa was about to repeat, Judge Rice would have been compelled to strike it as hearsay.  Hence Alebbini suffered no prejudice.

**Sub-claim C:  Failing to present evidence on behalf of the Defendant**

Alebbini claims Attorney Anderson provided ineffective assistance of trial counsel when he did not introduce in evidence a transcript of a telephone call from April 26, 2017 (§ 2255 Motion, ECF No. 132, PageID 3998).  But as Alebbini admits, Anderson did not have the transcript at trial: "This evidence was not presented at trial, nor after trial even though the defendant asked his counsel to do so many times: the defense counsel denied its being provided by the government, which led the defendant to accuse the government of manipulating the recording (See exhibit K)."  It cannot be ineffective assistance of trial counsel to fail to introduce

14

in evidence documents which an attorney does not have. Alebbini also argues this evidence would have shown that buying an airline ticket and going to the airport did not constitute taking a substantial step, an element of the attempt offense. But the fact that Alebbini may have had a different intent when taking those actions than actually providing support to ISIS does not make those "insubstantial steps." Whether the steps were "substantial" is a different question from what those steps were intended to accomplish.

### Subclaim D: Refusal to File Post-Trial Motions

In his Fourth Subclaim of ineffective assistance, Alebbini claims Attorney Anderson refused to file several post-trial motions which Alebbini had requested (§ 2255 Motion, ECF No. 132, PageID 4002). Alebbini does nothing more to describe the content of these proposed motions than to say they were intended to "clear some of the misconception and errors that happened at trial." *Id.* at PageID 4002. In particular, he does not suggest what form these motions were intended to take and when he asked that they be made.

After a verdict in a federal case, it is possible to move for twenty-eight days to alter or amend the judgment. Fed.R.Civ.P. 59. In a case tried to the bench, it is also possible to move to amend the findings of fact and conclusions of law, subject to the same time limitation. Fed.R.Civ.P. 52. Finally, it is possible to move for relief from judgment under Fed.R.Civ.P. 60(b), subject to different limitations. Alebbini has given no details on the motions he wanted filed, so it is impossible to tell if it was ineffective assistance of trial counsel to refuse to make them. On the other hand, it may have been a matter of judgment on Attorney Anderson's part

rather than deficient performance. Appointed counsel are not tasked with acting merely as scriveners for their clients, but tasked with providing professional advice.

In sum, Alebbini's Ground Two is procedurally barred or without merit and should be dismissed.

**Ground Three:  Judicial Misconduct**

In his Third Ground for Relief, Alebbini asserts he was prejudiced by judicial misconduct on the part of Judge Rice in that the Classified Information Procedure Act permits the Government to provide classified information to the Court without first sharing it with security-clear defense counsel. Alebbini seems to be accusing Judge Rice of judicial misconduct because he accepted such information in conformity with CIPA. However, a federal judge does not engage in misconduct by accepting information which he is permitted to receive under federal law. Alebbini does not claim CIPA is unconstitutional and in any event it would not be misconduct to continue to act under CIPA until a higher court had declared it unconstitutional.

Alebbini accuses Judge Rice of misconduct in refusing to entertain *pro se* motions. Where a defendant is represented by counsel, as Alebbini was throughout his case in this Court, a trial judge is under no obligation to accept *pro se* filings. A criminal defendant in federal court has a right to proceed *pro se* or to be represented, but no right to hybrid representation. *Faretta v. California,* 422 U.S. 806, 835 (1975).

Lastly, Alebbini accuses Judge Rice of misconduct in that the verdict is not supported by sufficient competent evidence. It would not be misconduct to be wrong about whether the evidence was sufficient; there is no part of the Code of Judicial Conduct which makes it

16

unethical to make a mistake, so this last sub-claim fails to state a claim under the Constitution. Moreover, the claim is barred by *res judicata* because it was presented on appeal and the Sixth Circuit ruled that there was sufficient evidence.

Alebbini's Third Ground for Relief should therefore be dismissed with prejudice.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the § 2255 Motion be DISMISSED WITH PREJUDICE. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Defendant be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.

September 16, 2022.

s/ *Michael R. Merz*<br>United States Magistrate Judge

\#